UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CAROLYN A. MORGAN,<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　　　　　Defendant. | Case No. 2:13-cv-00173-APG-GWF<br><br>**FINDING AND RECOMMENDATION** |

　　　This matter comes before the Court on Plaintiff Carolyn Morgan's ("Plaintiff") complaint for judicial review of administrative action by the acting Commissioner of Social Security denying her claim for disability benefits under Title II of the Social Security Act. Specifically, Plaintiff seeks reversal of the Administrative Law Judge's ("ALJ") decision dated June 23, 2011 denying her claim for disability benefits.

　　　Plaintiff's Complaint (#3) was filed on February 6, 2013. Defendant's Answer (#11) was filed on April 9, 2013, along with a Notice of Filing the Administrative Record ("AR") (#12). Plaintiff filed her Motion for Remand (Doc. #17) on May 21, 2013. Defendant filed her Response (#20) on July 19, 2013. Plaintiff filed her Reply (#21) on August 8, 2013.

## BACKGROUND

**A.　Procedural History**

　　　Plaintiff was born on June 6, 1961. AR 49. Plaintiff initially alleged a disability onset date of April 4, 2007. AR 133. At the administrative hearing, Plaintiff amended her alleged onset date to May 1, 2008. AR 48. Prior to the alleged disability onset date, Plaintiff worked as a dry cleaning attendant until collapsing at work in April 2008. AR 51. Plaintiff filed an application for a period of disability,

disability insurance benefits, and supplemental security income on November 20, 2007.  AR 133.  The Commissioner denied Plaintiff's claims at the initial determination, and denied reconsideration of that denial on June 20, 2008.  AR 84.  Plaintiff requested an appeal before an ALJ on July 8, 2008.  AR 91.  The ALJ conducted a hearing on January 4, 2011.  AR 45.  The ALJ issued an unfavorable decision on June 23, 2011.  AR 27.  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

      **B.**    **Factual History**

          **i.**    *Treatment*

Plaintiff alleges symptoms and limitations arising from hypertension, severe arthritis of the hands/legs, chronic back pain, and spinal lipomas.  AR 34.  December 5, 2007 outpatient medical records from University Medical Center ("UMC") indicate Plaintiff visited UMC Ambulatory Care complaining of back pain during the preceding two weeks.  AR 218.  The records suggest she had hypertension, a lipoma that was not causing pain, and pain throughout the thoracic back.  *Id.*  Plaintiff told the UMC doctor that she had been out of her hypertension medication for two weeks.  *Id.*  Plaintiff informed UMC that her pain started with recent heavy lifting.  *Id.*  Plaintiff also complained of pain in her hands and wrists.  *Id.*  An image of Plaintiff's thoracic spine, taken December 5, 2007, revealed alignment "within the normal limits" and an "unremarkable thoracic spine series."  AR 220.  In March of 2008, Plaintiff began seeking care at the UMC Lied Outpatient clinic, complaining of lower back pain.  AR 437.  Plaintiff stated her back pain had persisted for years, and was manageable until she had to stop working secondary to pain two months previous to her initial UMC Lied Outpatient Clinic visit.  *Id.*  A CT scan of the lumbar spine conducted on April 16, 2008 revealed mild degenerate disk space narrowing at L4-L5, with a mild disk bulge to the left, and degenerative disk bulge at L5, S1.  AR 440.  The scan revealed no foraminal stenosis appreciated at either level.  *Id.*

Plaintiff underwent surgical removal of the lipoma at UMC on August 11, 2008.  AR 454.  Plaintiff was sent home with no complications, though she returned later "feeling worse."  *Id.*  The UMC physician noted that "there is no pain[,] [...] just anxiety and shortness of breath."  *Id.*  It was noted that on the day of the surgery, pre-operation, that Plaintiff could "walk in and out without any

difficulty" and that there was "no antalgic gait." AR 455. On September 6, 2008, Plaintiff returned to UMC with a "four-day history of increasing back pain at the incision site." AR 449. An infection at the incision site was treated "without difficulty." AR 449. Plaintiff underwent chemotherapy, secondary to the spinal lipomas, with Dr. Jennifer Avena, DO. AR 338. According to hearing testimony, Plaintiff ceased chemotherapy around August 2011. AR 53. Despite Plaintiff's continued complaints of lower back pain, a computerized tomography scan taken on October 3, 2008 revealed no significant spinal stenosis. AR 481. Plaintiff was also referred to physical therapy on October 3, 2008, *see id.*, but no record of any physical therapy sessions are in the record. Treatment notes indicate that on December 18, 2008 the incision-area infection had cleared and Plaintiff had "excellent feeling of the wound site," though Plaintiff continued to exhibit bilateral sacroiliac pain and paraspinal muscle tenderness in the lumbar region. AR 477.

In May of 2009, her followup visit gaps were increased significantly to three months. AR 489. At a June 12, 2009 visit for troubles with allergies, the treating physician noted that Plaintiff was "moving all extremities well" and that there was no apparent weakness. AR 423. A June 30, 2009 x-ray of Plaintiff's elbow revealed no abnormalities. AR 493. Another June 30, 2009 image revealed degenerative changes at the AC joint in her right shoulder with a four-centimeter sclerotic lesion, involving the proximal shaft of the humerus. AR 494.

Plaintiff currently takes a variety of medications to resolve her alleged pain symptoms. AR 211-13. An April 25, 2008 UMC note reflected that Plaintiff received "significant benefit from the current medication regimen[.]" AR 440. In the same note, treating physician Dr. Avena stated Plaintiff would be unable to work for three months, was recovering from her back problem, and was "a good candidate for a job rehab." AR 441. Dr. Avena noted on July 21, 2009 that Plaintiff requested a change in medical providers for an unknown reason. AR 414.

Plaintiff began treatment with Dr. Abhinav Sinha in December of 2009. AR 336. In an undated statement, Dr. Sinha noted that Plaintiff is "permanently disabled" because of sciatica, asthma, reflux esophagitis, hypertension, obesity, and depressive disorder. *Id.* Dr. Sinha's treatment notes reflect continued observation of lumbar spasm and tenderness from December 15, 2009 through December 27, 2010, at intervals ranging between one and two months. AR 352-66. Additional treatment notes from

Dr. Sinha were submitted to the Appeals Council, which it considered in denying Plaintiff's request for review.  AR 5.  The notes continue to indicate observations of lumbar spasm and tenderness from January 18, 2013 through July 3, 2012 at monthly intervals.  AR 546-59.

   ii.  *Medical Opinions*

  Rito Maningo, MD, completed a pre-onset-date consultative residual functional capacity ("RFC") assessment on February 20, 2008.  Dr. Maningo opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand for 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and occasionally balance, crouch, and crawl.  AR 231.  Dr. Maningo noted an "exaggeration of symptoms."  AR 232.

  Karyn Doddy, MD, of the Disability Determination Services, completed an RFC assessment on June 17, 2008.  Dr. Doddy opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand for a total of six hours in an 8-hour workday, sit for a total of six hours in an 8-hour workday, and push/pull an unlimited amount.  AR 326.  Dr. Doddy also opined that Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, and could frequently balance.  AR 327.  Dr. Doddy stated that Plaintiff should avoid concentrated exposure to extreme cold and vibration, and found Plaintiff capable of work at the "light" level of exertion.  AR 329.

  Consultative orthopedic examiner Richard Cestkowski, DO completed a post-hearing RFC assessment on April 6, 2011.  Dr. Cestkowski opined that Plaintiff could frequently lift up to 10 pounds, occasionally lift up to 20 pounds, could sit 4 hours total in an 8-hour workday, stand for 2 hours total in an 8-hour workday, and could walk for 2 hours total in an 8-hour workday.  AR 506-07.  He noted Plaintiff did not need a cane or walker to assist in ambulation.  AR 507.  Plaintiff denied Dr. Cestkowski's requests to attempt to kneel, squat, or perform heel/toe walking.  AR 514.  Dr. Cestkowski noted "obvious symptom magnification" during the evaluation, confirmed by Waddell's signs being "5/5 positive."  AR 513.  Dr. Cestkowski also "question[ed] [Plaintiff's] effort with motor testing[.]"  AR 515.  Examination of the bilateral upper and lower extremities revealed intact sensation but some weakness.  AR 514.  Dr. Cestkowski observed no evidence of tenderness, spasm, or guarding during examination of the cervical spine.  AR 513.

. . .

Treating physician Dr. Sinha completed a post-ALJ-decision RFC on January 18, 2012, AR 529, that was also before the Appeals Council along with Dr. Sinha's added treatment notes. AR 5. Dr. Sinha listed his disabling diagnoses as sciatica, hypertension, asthma, acid reflux, and depression, exhibited through the symptoms of lower back pain, anxiety, and fatigue. AR 529. Dr. Sinha opined that Plaintiff could sit, stand, or walk for less than 2 hours in an 8-hour workday, and that Plaintiff would need to take unscheduled breaks in an 8-hour workday. AR 531. Dr. Sinha further opined that Plaintiff needs a walking aid, and can only lift 10 pounds. AR 532. Dr. Sinha also stated that Plaintiff has "significant limitations" performing repetitive reaching or handling. *Id.* Finally, Dr. Sinha opined that Plaintiff would have "good days" and "bad days," and would miss work more than three times a month. AR 533.

### iii. *Administrative Hearing*

At the hearing, Plaintiff testified that she became unable to work after she "fainted out" at work in April of 2008 and "end[ed] up at UMC Hospital." AR 51. It was there Plaintiff first learned of her lipomas. AR 51. Plaintiff testified that she is unable to stand or sit for any extended period of time because of "needle" and "pins" pain in her legs and lower back. AR 55. Plaintiff also testified that her medication made her unable to focus. AR 56. Plaintiff stated that she needs a cane to walk. AR 57. Plaintiff testified that she is able to perform almost no household chores, and is regularly assisted by her two children. AR 58. Plaintiff answered the ALJ's questions regarding her own opinion of how long she could stand or sit by claiming she is constantly in pain. AR 59-60. Plaintiff stated the most she is able to lift or carry is her cane or a plate. AR 60. In response to questions by her counsel, Plaintiff stated that with her cane she could stand for five minutes and could walk "about three minutes" before needing to rest. AR 61-62. Plaintiff also stated she gets "right on up" after sitting because of immediate pain. AR 62.

Vocational Expert Robin Generaux testified at the hearing. AR 65. Ms. Generaux characterized Plaintiff's past work as "medium," and testified that Plaintiff had not exhibited skills in her past work that could transfer to other semiskilled or skilled work at the sedentary exertional level. AR 66. Plaintiff's counsel did not ask Ms. Generaux any questions. AR 66.

...

### C.     ALJ's Decision

The ALJ issued his decision on June 23, 2011.  AR 39.  The ALJ found that Plaintiff was not disabled, because Plaintiff possessed sufficient RFC to perform "light" work.  AR 38.  In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f).   The ALJ first noted that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2012.  AR 32.  The ALJ then found that Plaintiff did not engage in any substantial gainful activity from the amended onset date of May 1, 2008.  *Id.*  The ALJ determined Plaintiff had severe impairments in the forms of degenerative disc disease of the lumbar spine (with thoracic, lumbar, and lower extremity pain), hypertension, restless leg syndrome, and bilateral hand pain.  *Id.*  The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 33.  The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b).  *Id.*  Finally, utilizing the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 38.

In determining Plaintiff's RFC, the ALJ gave a considerably detailed account of Plaintiff's symptoms and the treatment and medications Plaintiff has received as contained in the record.  AR 34-37.  The ALJ afforded "significant weight" to Dr. Cestkowski's opinion for "a multitude of reasons."  AR 37.  First, "his opinion was supported by [Plaintiff's] examination, which evidenced positive Waddell's signs, a lack of effort in range of motion testing, and a refusal to perform the necessary exercises."  *Id.*  Furthermore, the ALJ was persuaded that Dr. Cestkowski's opinion was within his orthopedic area of medical expertise.  *Id.*  The ALJ also found that Dr. Cestkowski's conclusion that Plaintiff is capable of light work is supported by the objective medical record, and also supported by the identical conclusion of Dr. Maningo.  *Id*.  The ALJ also afforded Dr. Doddy's opinion "significant weight" as "the opinion of a non-examining expert."  *Id.*  The ALJ noted that Dr. Doddy's opinion was consistent with "the laboratory and imaging findings of record," and that Dr. Doddy "adequately considered [Plaintiff's] subjective complaints[.]" *Id.*

. . .

The ALJ, acknowledging that both Dr. Avena and Dr. Sinha were treating physicians, afforded Dr. Avena's opinion concerning Plaintiff's ability to work greater weight than Dr. Sinha's opinion. Specifically, the ALJ noted that a review of Dr. Sinha's then-available treatment notes failed to support Dr. Sinha's opinion, as they "only expressed more medications management, with monthly follow up visits." AR 35. The ALJ categorized this as "conservative care," and noted that on May 4, 2010, Dr. Sinha expressed that Plaintiff was "functional" with prescriptions. *Id.*, AR 360. Contrarily, the ALJ found, Dr. Avena's opinion was "supported by laboratory and clinical findings of record, as well as numerous treating notes, which evidenced the eventual resolution, to a great extent, of [Plaintiff's] medical issues." The ALJ also noted that three consultative examiners in the record noted "severe symptomology exaggeration." The ALJ was therefore persuaded "to issue greater weight to the treating opinion" of Dr. Avena. AR 36.

Finally, the ALJ discounted Plaintiff's subjective testimony for a number of reasons. The ALJ found that if Plaintiff's "impairments were as severe as she alleged, she would treat more invasively to resolve them, with additional surgical intervention, injections, therapy sessions, and the like." AR 37. The ALJ noted that, by and large, Plaintiff only follows up for medications management. *Id.* The ALJ explained that "her limited treating schedule indicates that [Plaintiff's] impairments were largely resolved, via surgery, following her treatment to address lipoma removal, and the post-surgical infections." *Id.* The ALJ found "no reason to reduce [Plaintiff's] ability to stand and/or walk" to less than six hours in a workday, given the many indications of malingering in the record, confirmed by '5/5' positive Waddell's signs[.]" *Id.* The ALJ further noted that despite Plaintiff's allegations of chronic pain, she was able to travel out of state (to Texas) during April and May of 2009 for an extended period of 6 weeks. AR 35, AR 361. The ALJ concluded that "[t]hese factors, coupled with [Plaintiff's] successful surgical intervention, presently 'mild' objective findings, and helpful medications, tips the scale toward a finding that she is certainly not disabled." AR 37.

## DISCUSSION

### I.  Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal

standards.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole and consider both adverse and supporting evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision.  *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).  *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision.  *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings.  *Lewin* v. *Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

...

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a)   he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

## III.    Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id.* § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d).

If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a). Plaintiff now asserts the ALJ improperly rejected medical opinions and improperly failed to inquire of the vocational expert if there exist significant jobs for Plaintiff given her limitations.

### A. The ALJ did not err in the weight he afforded to the medical opinions.

In *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001), the Ninth Circuit set forth the rules regarding the weight that is to be accorded to different types of medical opinions:

> Title II's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. §404.1527(d). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Lester*, 81 F.3d at 830. 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists.

"The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002). The Social Security Administration has also stated that "opinions from State agency medical and psychological consultants [...] may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling 96-6p. "Generally, the more consistent an opinion is with the record as a whole, the more weight" is given to that opinion. 20. C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

"Although the contrary opinion of a non-examining medical expert does not alone constitute a specific legitimate reason for rejecting a treating or examining physician's opinion, it may constitute

10

substantial evidence that is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)). The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Magallanes*, 881 F.2d at 750. An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). Like the opinion of a treating doctor, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). In determining whether an ALJ provided a legitimate reason for rejecting an opinion, though, courts are not deprived from their faculties "for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes,* 881 F.2d at 755.

When, as here a claimant submits evidence for the first time to the Appeals Council, "which considers the evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Commissioner*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Here, the Court finds the ALJ afforded proper weight to the respective medical RFC opinions, and articulated specific reasons for rejecting portions of Dr. Cestkowski's opinion. In accepting Dr. Doddy's conclusion that Plaintiff is capable of performing light work, the ALJ found that it was supported by the whole of the medical records. The ALJ noted that Dr. Maningo also found Plaintiff capable of light work. The ALJ noted that in an examination after Dr. Doddy's opinion, Plaintiff exhibited no evidence of noteworthy spasm or tenderness in her lumbar spine. AR 36. The ALJ also enumerated the multiple images and examinations that revealed no spinal issues. AR 34-36. The ALJ further noted that on numerous occasions, Plaintiff told various physicians that she has received "significant benefit" from her course of medications. AR 34. The ALJ also noted that Dr. Sinha, at nearly all of Plaintiff's office visits, stated that Plaintiff was "functional" on her medications. AR 35.

Moreover, the ALJ appropriately referenced Plaintiff's limited credibility to support his reliance upon Dr. Doddy's RFC conclusion. The ALJ noted that three consultative examiners remarked upon

Plaintiff's clear symptom exaggeration. AR 36. Dr. Cestkowski observed "obvious" magnification, and found Plaintiff to have five out of five Waddell's signs. AR 513. Dr. Cestkowski also lamented the difficulty of evaluating Plaintiff due to her deficient effort throughout the examination. AR 515. Because the ALJ documented Plaintiff's inconsistencies, and because Dr. Doddy's conclusion is supported by the medical record as a whole, the ALJ afforded Dr. Doddy's conclusion appropriate weight and properly rejected Dr. Sinha's conclusions, as discussed further below. Additionally, the ALJ articulated sufficiently specific reasons for rejecting Dr. Cestkowski's sit/stand limitations while affording the balance of his opinion significant weight. The ALJ found "no reason to reduce" Plaintiff's sit/stand capabilities to below six hours per work day because of the "many indications of malingering" in the record, which the ALJ exhaustively listed, including the symptom magnification during Dr. Cestkowski's examination. AR 37. The ALJ finally noted that Dr. Cestkowski explained he experienced difficulty in adequately assessing Plaintiff's capacity given her lackluster efforts during the examination.

The ALJ properly rejected Dr. Sinha's RFC conclusion in favor of those by examining physician Dr. Cestkowski and consultative physician Dr. Doddy. The ALJ stated that Dr. Sinha's treating notes "failed to support his opinion, as they only expressed more medications management, with monthly followup visits." AR 35. This, the ALJ noted, stood in contrast to the opposite opinion of treating physician Dr. Avena, which was "supported by laboratory and clinical findings of record, as well as numerous treating notes, which evidenced the eventual resolution, to a great extent," of Plaintiff's medical issues. AR 36. Furthermore, the ALJ noted that Plaintiff denied any change in the character or severity of her back pain on numerous occasions to Dr. Sinha. AR 36. Finally, the ALJ noted that despite his undated conclusion that Plaintiff was disabled, Dr. Sinha repeatedly stated that Plaintiff was "functional" on medications. AR 35.

The Court also finds that, even in light of the additional treatment notes and RFC assessment from Dr. Sinha, the ALJ's RFC determination is still supported by substantial evidence in the record. The added treatment notes are largely identical to those that were before the ALJ, and reflect monthly visits for medication refills. Furthermore, even on the same day that Dr. Sinha completed his RFC, he described Plaintiff as "functional with meds." "Such discrepancy is a clear and convincing reason for

not relying on the doctor's opinion." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ properly rejected doctor's opinion because the doctor's clinical notes from the same day contradicted his conclusion). Similarly, Dr. Sinha concluded that Plaintiff had "significant limitations in doing repetitive reaching, handling, or fingering." AR 532. Plaintiff's treatment notes demonstrate, however, that prior to this conclusion, Dr. Sinha had never observed sustained limitations in the functional capacity of Plaintiff's upper extremities. Given the resulting limited value of Dr. Sinha's opinion, and the reasons the ALJ articulated for accepting the opinions of Dr. Doddy and Dr. Cestkowski, the ALJ's RFC determination remains supported by substantial evidence.

**B.   The ALJ did not err by failing to present Dr. Cestkowski's limitations to the Vocational Expert.**

Plaintiff also asserts the ALJ erred by failing to ask the vocational expert if jobs are available to an individual of Plaintiff's vocational profile with all of the limitations Dr. Cestkowski found. The testimony of a vocational expert is only valuable if the posed hypothetical includes those functional limitations established by the evidence in the record. *Thomas v. Barnhart*, 278 F.3d 948, 956 (9th Cir. 2002). *See also Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) ("the ALJ did not err in omitting [] limitations that [the claimant] had claimed, but had failed to prove" because the ALJ's findings were supported by substantial evidence). As detailed above, the ALJ articulated sufficient reasons for rejecting the sit/stand limitation imposed by Dr. Cestkowski. Furthermore, for the reasons discussed, the ALJ's findings were supported by substantial evidence. Therefore, the ALJ did not err by failing to present a hypothetical to the vocational expert that included all of Dr. Cestkowski's limitations.

## RECOMMENDATIONS

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand (#17) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-motion for Summary Judgment (#20) be **granted**.

...

...

**NOTICE**

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 7th day of March, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge